J-S77038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RICARDO MORALES A/K/A RICARDO MORALES-VASQUEZ, | |
| Appellant | No. 757 MDA 2016 |

Appeal from the PCRA Order April 25, 2016
in the Court of Common Pleas of Lancaster County
Criminal Division at No.: CP-36-CR-0004025-2002

BEFORE: PANELLA, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED OCTOBER 28, 2016**

Appellant, Ricardo Morales a/k/a Ricardo Morales-Vasquez, appeals from the order which dismissed his counseled fourth petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541–9546 (PCRA), as untimely. Appellant claims his petition is timely under the after-discovered facts exception. We affirm.

On April 11, 2003, a jury convicted Appellant of murder of the second degree, 18 Pa.C.S.A. § 2502; two counts of aggravated assault, 18 Pa.C.S.A. § 2702(a)(1); robbery, 18 Pa.C.S.A. § 3701(a)(1)(i); and criminal conspiracy to commit robbery, 18 Pa.C.S.A. § 903(a)(1), (2).

_____

[*] Retired Senior Judge assigned to the Superior Court.

The conviction arose out of a botched robbery. On April 30, 2002, Shalimar Espinosa was fatally shot near Walnut and Nevin Streets, in Lancaster, Pennsylvania. His brother, Tyndall Espinosa, was also shot, but survived.

Appellant's jury trial began on April 1, 2003. The evidence tended to show that Appellant conspired with Roberto Colon, Angel Bermudez, Angel Martinez, Miguel DeJesus, and Lazaro DeJesus to commit the crimes previously noted. (*See generally Commonwealth v. Morales-Vasquez*, N.T. Trial, 4/01/03—4/11/03; *see also Commonwealth v. Morales-Vasquez*, No. 948 MDA 2003, unpublished memorandum at 1-2 (855 A.2d 135 (Pa. Super. filed May 11, 2004), *appeal denied*, 860 A.2d 123 (Pa. 2004)). At trial, Angel Bermudez, Angel Martinez, Miguel DeJesus, and Lazaro DeJesus testified against Appellant and Roberto Colon.

The conspirators originally intended to rob Luis Santiago, a known drug dealer. Shalimar Espinosa was a roommate and apparently a drug associate of Santiago. After arriving outside Santiago's apartment, the conspirators made a last-minute decision to set up a sham drug purchase from Santiago to lure him out and ambush him.

While they were driving away in Martinez's minivan to arrange the sham drug purchase, the conspirators saw the Espinosa brothers on the street and decided to rob them instead. Appellant and Colon got out of the minivan and approached the Espinosa brothers. They ordered them not to

run or move, but both turned to run anyway. Appellant and Colon began to shoot, fifteen rounds in all.

On May 16, 2003, the court sentenced Appellant to a term of life imprisonment without parole plus a consecutive period of not less than ten nor more than twenty years of incarceration. Appellant filed a notice of appeal on June 13, 2003. This Court affirmed his judgment of sentence on May 11, 2004. ***See Commonwealth v. Morales-Vasquez***, 855 A.2d 135 (Pa. Super. 2004) (unpublished memorandum). On October 5, 2004, the Supreme Court of Pennsylvania denied Appellant's petition for allowance of appeal. ***See Commonwealth v. Morales-Vasquez***, 860 A.2d 123 (Pa. 2004).

Appellant did not file a petition for a writ of *certiorari* with the United States Supreme Court. ***See*** U.S.Sup.Ct.R. 13. Accordingly, Appellant's judgment of sentence became final on January 3, 2005. ***See*** 42 Pa.C.S.A. § 9545(b)(3) ("For purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review."). Therefore, Appellant had until January 3, 2006 to file a timely PCRA petition. [1]

_____

[1] In pertinent part, 42 Pa.C.S.A. § 9545 provides:

(b) Time for filing petition.—

*(Footnote Continued Next Page)*

Separately, after Appellant's trial and sentence, on August 20, 2003, Lazaro DeJesus entered into a negotiated plea agreement to murder of the third degree. He received a sentence of not less than nine nor more than eighteen years' incarceration in a state correctional institution, followed by a consecutive period of probation of ten years. Angel Bermudez also entered a negotiated guilty plea to murder of the third degree, among other charges. On November 5, 2003 the court sentenced him to a term of not less than twelve and one-half nor more than twenty-five years of incarceration at a state correctional institution. On the same date, Angel Martinez similarly entered a guilty plea to murder of the third degree in exchange for a negotiated sentence of not less than twelve and one-half nor more than twenty-five years of incarceration at a state correctional institution.

---

*(Footnote Continued)* ────────

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

\* \* \*

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]

42 Pa.C.S.A. § 9545(b)(1)(ii).

The instant petition, Appellant's fourth, was filed April 30, 2015.[2] The PCRA court again appointed counsel, who filed an amended petition. Appellant essentially alleges that before his trial (and contrary to their denials at that trial), Lazaro DeJesus, Angel Bermudez, and Angel Martinez had already received promises of leniency in sentencing from the Commonwealth in their own criminal cases. (*See* Amended PCRA Petition, 9/14/15, at 2). Appellant asserts that "no sooner than March 5, 2015," (after he learned that one of his co-conspirators was about to be released from prison), did he investigate further and discover that three of them had entered negotiated pleas to lesser sentences than he received. (*Id.* at 2). He claims that the secret promises of leniency they received induced them to testify against him.

On January 7, 2016, the PCRA court held an evidentiary hearing on timeliness. After the hearing, on April 25, 2016, the court dismissed the

_____

[2] Appellant's prior PCRA procedural history is not in dispute. He filed his first PCRA petition on October 6, 2005. The PCRA court appointed counsel and, after an evidentiary hearing and briefs on the matter, denied relief on June 29, 2007. Appellant did not appeal. He filed a second PCRA Petition on February 9, 2009. The PCRA court again appointed counsel. After an evidentiary hearing the PCRA court denied the second petition on March 9, 2010. This Court affirmed the denial on October 28, 2010. Appellant filed a third PCRA petition, *pro se*, on August 29, 2012. The PCRA court filed a Notice of Intent to Dismiss pursuant to Pennsylvania Rule of Criminal Procedure 907 on December 7, 2012, and dismissed the petition on May 17, 2013, as untimely. This Court affirmed on February 28, 2014.

petition as untimely, with no statutory exception to the time bar pleaded and proven. This timely appeal followed.[3]

On appeal, Appellant presents one question for our review:

> Whether the PCRA [c]ourt erred in ruling that the PCRA [p]etition was untimely filed, where the facts upon which the petition was predicated were unknown to him and could not have been ascertained by the exercise of due diligence prior to a date within [sixty] days of the filing of the petition[?]

(Appellant's Brief, at 4).

Our standard of review for an order denying PCRA relief is well-settled: We review a PCRA court's order to determine whether it is supported by the evidence of record and is free of legal error. Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record. *See Commonwealth v. Carter*, 21 A.3d 680, 682 (Pa. Super. 2011).

Notably, for our review, "if a PCRA [p]etition is untimely, a trial court has no jurisdiction to entertain the petition." *Commonwealth v. Hutchins*, 760 A.2d 50, 53 (Pa. Super. 2000) (citations omitted). The PCRA provides that "[a]ny petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final[.]" 42 Pa.C.S.A. § 9545(b)(1).

_____

[3] Counsel filed a timely statement of errors on June 1, 2016. The PCRA court filed its opinion on June 22, 2016. *See* Pa.R.A.P. 1925.

Here, as already noted, Appellant's judgment of sentence became final on January 3, 2005, ninety days after the Pennsylvania Supreme Court denied leave to appeal and Appellant did not file a petition for a writ of *certiorari* with the United States Supreme Court. **See** U.S.Sup.Ct.R. 13.

Therefore, Appellant had one year, until January 3, 2006, to file a timely PCRA petition. Because Appellant did not file his current petition until April 30, 2015, over nine years later, it is untimely on its face. Thus, he had to plead and prove that his claim falls under one of the exceptions at section 9545(b) to establish jurisdiction for a merit review. **See** 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii).

Section 9545 provides that the court can still consider an untimely petition where the petitioner successfully proves that: (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States; (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively. **See id.**

Furthermore, a petitioner who wishes to invoke any of the above exceptions must file the petition "within [sixty] days of the date the claim could have been presented." *Id.* at § 9545(b)(2). The Pennsylvania Supreme Court has repeatedly stated that it is an appellant's burden to plead and prove that one of the above-enumerated exceptions applies. *See*, *e.g.*, *Commonwealth v. Abu–Jamal*, 941 A.2d 1263, 1268 (Pa. 2008), *cert. denied*, 555 U.S. 916 (2008).

Instantly, Appellant alleges that his petition is timely under section 9545(b)(1)(ii), newly discovered facts. (*See* Appellant's Brief, at 5). He claims that the Commonwealth never informed him that, at the time of trial, three witnesses had received the promise of favorable treatment if they testified against him. Appellant only discovered this, he claims, almost ten years later when he learned one of the conspirators was about to be released.

On further investigation, he continues, he engaged (through family) a private investigator who interviewed at least some of the conspirators and reported that they told him that they had received pre-trial promises of favorable treatment for their testimony. Thus, Appellant's after-discovered facts include recantation testimony. After-discovered facts or evidence cases can be premised on recantation testimony. *See Commonwealth v. Johnson*, 966 A.2d 523, 541 (Pa. 2009).

However, to prevail under the newly-discovered facts exception, Appellant must plead and prove that the facts upon which the claim is predicated were unknown to him and could not have been ascertained earlier by the exercise of due diligence. *See Commonwealth v. Bennett*, 930 A.2d 1264, 1273–74 (Pa. 2007). "A petitioner must . . . explain why his asserted facts could not have been ascertained earlier with the exercise of due diligence." *Commonwealth v. Taylor*, 933 A.2d 1035, 1041 (Pa. Super. 2007), *appeal denied*, 951 A.2d 1163 (Pa. 2008) (citation omitted). Here, Appellant has failed to do so.[4] On independent review we conclude that the PCRA court properly decided that Appellant has not pleaded facts which demonstrate that he exercised due diligence in obtaining this information.

"Our Supreme Court has held for purposes of 42 Pa.C.S.A. § 9545(b)(1)(ii) information is not 'unknown' to a PCRA petitioner when the information was a matter of public record." *Id.* (citing *Commonwealth v.*

---

[4] We note for completeness and clarity that recantation testimony must meet the four-part standard established by our Supreme Court. *See, e.g., Commonwealth v. D'Amato*, 856 A.2d 806, 823 (Pa. 2004) (petitioner must establish that: (1) evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. ." *Id. at 823* (citations omitted). Furthermore, the *D'Amato* Court acknowledged that recantation evidence "is notoriously unreliable, particularly where the witness claims to have committed perjury." *Id.* at 825 (citations omitted).

*Chester*, 895 A.2d 520, 523 (Pa. 2006) (claim founded on arrest warrant in record of case was based on matter of public record that due diligence would have disclosed to appellant long before filing of PCRA petition).

In this appeal, Appellant concedes that the sentences received by his co-conspirators are a matter of public record. (*See* Appellant's Brief at 9). Nevertheless, he maintains that the after-discovered facts are not the sentences themselves, but the secret promises of leniency before his trial, untruthful trial testimony about the absence of such promises, and the Commonwealth's failure to disclose the promises. (*See id.*). We disagree.

> The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced. Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.

*Commonwealth v. Brown*, 111 A.3d 171, 176, *appeal denied*, 125 A.3d 1197 (Pa. 2015) (citations and internal quotation marks omitted).

Preliminarily, we emphasize for the clarity of the record that "[t]he Commonwealth disagrees that any negotiated plea agreements were made prior to Appellant's trial." (Commonwealth's Brief, at 7 n.7).

Next, we observe that Appellant's attempt to distinguish between the conceded public records of sentencing and the alleged "secret promises of

leniency" is unpersuasive. The focus of the exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts. *See Brown*, *supra* at 176. Even if we were willing to accept Appellant's narrative odyssey of discovery at face value for the sake of argument, it only goes to show **how** he discovered the purported promises of leniency. It does not meet his burden to prove **why** he could not have discovered the facts he now relies on earlier with the exercise of due diligence.

To the contrary, our independent review of the record reveals that at the hearing on Appellant's **first** PCRA petition, the issue of the testifying coconspirators was already on the defense radar screen. At the PCRA hearing on that first petition, Appellant's trial counsel, now the Honorable Merrill M. Spahn, Jr., testified:

> [A] theme of our defense in this case was that the Commonwealth's case relied heavily on two individuals who were what I considered to be corrupt and polluted sources, had a motivation to implicate Mr. Morales-Vasquez, **so we spent an ample amount of time trying to investigate that.**

(N.T. PCRA Hearing, 12/15/06, at 6) (emphasis added).

Moreover, on the current fourth petition, at the PCRA hearing, the testimony of the "recanting" witnesses is blatantly self-contradictory and facially inconsistent, far below the burden of proof by a preponderance of the evidence necessary to establish an exception to the statutory time-bar.

- 11 -

Angel Bermudez first testified that his lawyer, Barry Goldman, Esq., told him before he testified there was an oral plea arrangement for ten to twenty years' imprisonment. (**See** N.T. PCRA Hearing, 1/07/16, at 49-50). However, on cross-examination, the prosecutor read to Bermudez his trial testimony that **nobody had promised him anything in return** for his testimony. (**See id.** at 54). The prosecutor then asked him:

[Commonwealth ]   Q.   Was that the truth or was that a lie?

Bermudez replied:   A.   The truth.

(**See id.**).   Attorney Goldman testified at the same hearing that there was no pre-trial offer for testimony:

I have no recollection of an offer being [made].[5]   If I can add, given the gravity of these charges and according to our standard protocol, there would not have been a specific offer made in advance of trial.  That is not the way things are done.

(**Id.** at 82).

Similarly, on the cross-examination of Angel Martinez, the following exchange occurred:

[Commonwealth] Q:   So if you told the jury at the time of the trial that there were no promises made to you, you think you were telling the truth at that time or telling a lie?

[Martinez] A:   Telling the truth.

(**Id.** at 60).

---

[5] The transcript reads "being paid."

- 12 -

It bears noting that the prosecutor in Appellant's trial, Christopher A. Hackman, also now a judge in the Court of Common Pleas of Lancaster County, flatly denied making any plea offers to the testifying co-defendants, as a matter of office policy. (**See id.** at 34-37).

Correspondingly, Appellant's trial counsel, Attorney (now Judge) Spahn testified that he was never informed of any plea offers or agreements. (**See id.** at 5-8). Notably, he added that because his defense theory was that Appellant was duped into being the "fall guy[,]" if there had been any arrangement or agreements with the testifying co-conspirators from the Commonwealth, "I absolutely would have used it[,]" in support of that defense. (**Id.** at 9, 10).

The PCRA court emphasizes that the instant petition is untimely because "the failure to discover matters of public record for almost ten years cannot be described as due diligence." (PCRA Court Opinion, 6/22/16, at unnumbered page three). We agree. But we would go further.

As already noted, the defense theory of Appellant's case raised suspicions about the testifying co-conspirators as early as before trial. (**See** N.T. [First] PCRA Hearing, 12/15/06, at 6). Therefore, Appellant's claim that he had "no reason to even investigate his case" until he learned that the first sentence had been served is at plain variance with the facts and testimony of record. (Appellant's Brief, at 13).

Moreover, we note that Appellant had the benefit of counsel in three of his four PCRA petitions. Yet neither of the preceding counsel found support for the claim Appellant now raises, even though trial counsel testified that he investigated and would have raised the issue if it had been available.

The mere assertion of biased testimony is not enough to establish an exception to the statutory time bar. Appellant had the burden to plead and prove by a preponderance of the evidence why he could not have discovered earlier the facts he now asserts, by the exercise of due diligence. He has failed to do so.

We conclude that the PCRA court properly determined that Appellant's petition is untimely and he failed to prove an exception to the statutory time bar. Because Appellant's petition is untimely, the PCRA court properly determined that it was without jurisdiction to address the merits of his asserted claims. Accordingly, we affirm the denial of his PCRA petition, albeit for slightly different reasons than those cited by the PCRA court. *See* ***Commonwealth v. Hernandez***, 886 A.2d 231, 240 (Pa. Super. 2005), *appeal denied*, 899 A.2d 1122 (Pa. 2006) (holding that appellate court may affirm order of trial court on any basis, so long as decision is correct).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/28/2016